## Case No. 6,455.

### The HIBERNIA.

### [1 Spr. 78.] [1]

District Court, D. Massachusetts. April, 1844.

SEAMEN—UNSEAWORTHINESS OF VESSEL—DEMAND OF SURVEY—WRONGFUL DISCHARGE—SHARE IN PROFITS—ADMIRALTY PROCESS—EXECUTION.

1. Where the crew of a vessel, in a foreign port, have reasonable grounds to believe that she is unseaworthy, and demand a survey, the master has no right to compel them to go to sea without one. And if he attempt to do so, they may resist.

2. If, for such resistance, the master causes them to be imprisoned on shore, and there

[1] [Reported by F. E Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

leaves them, it is a wrongful discharge. In such case, the crew of a whale ship were allowed their full lay, or share, of the voyage.

[Cited in The Grace Darling, Case No. 5,-651.]

3. The owners cannot deduct from such share, or lay, the amount which the master may have charged for articles furnished, unless such charge is shown to be correct.

4. If the master wrongfully detain clothing of a seaman, the owners are not liable therefor, unless they have ratified the acts of the master, or, upon demand, have refused to deliver it.

5. In the execution of admiralty process, in rem, the officer should take and hold actual and manifest possession.

6. If he do not, he is not entitled to charge custody fees, although he may have rendered himself liable for the safe keeping of the vessel.

The libellants in this case were defendants in the case of U. S. v. Givings [Case No. 15,-212]. Immediately after their acquittal, Davidson and twelve others of the seamen promoted a libel in rem, in a cause of subtraction of wages, against the Hibernia. The facts were the same as those already given in U. S. v. Givings, with the addition, that at the time of the difficulty at Port Louis, and the imprisonment of the libellants, each of them had an interest in the proceeds of the cargo, of from $150 to $300; and at that time, the ship was nearly full, and she took no oil afterwards. The libellants now claimed their full lay or shares of the proceeds of the voyage, as though they had returned in the ship. The owners sought to deduct about one-fifth of each man's share: that being the proportion of the time of the whole voyage, which they were not on board the vessel. There were also some further claims passed upon, which appear sufficiently in the opinion of the court.

SPRAGUE, District Judge. From the evidence, it is clear that there were reasonable grounds for believing that the Hibernia was unseaworthy. The crew, therefore, had a right to demand a survey, and the master had no right to compel them to go to sea without it; and if he attempted to do so, they had a right to resist such an attempt, in a proper manner. The crew had violated no duty and merited no punishment, and the master had no justification for causing them to be imprisoned. It is a strong case of wrongful discharge. It is urged that they left voluntarily, and against the will of the master, because they must have foreseen that such would be the necessary consequence of their refusal to heave up the anchor; that, in short, this refusal was an election on their part, not to come home in the ship. The court cannot agree to this proposition. On the contrary, their refusal being justifiable, it was not to be presumed that the master would persevere in his unjust requirements. And even if they had anticipated that the master would punish them for asserting their rights, that is by no means to be taken as an assent by them to such punishment. It fur-

ther appears, that the election to come directly home, was never offered them; as the master insisted on their returning to the cruising ground, until the vessel should be full, of which she then lacked several hundred barrels. Finally, there was no occasion for taking them from the ship, nor was there any ground for apprehending danger from them, if they returned on board. There is then no breach of contract on the part of the men; but the act of the master, in causing them to be taken from the ship, imprisoned, and left in the foreign port, was a gross violation of their rights. They were ready to perform their contract, and were prevented by the unjustifiable act of the master. They are entitled to their full lays. The owners charge the full amount of the master's bill for slops furnished the men, and decline to give the items, or any evidence of the same, on the ground, that as the master has a lien upon the proceeds of the voyage for his slops (Barney v. Coffin, 3 Pick. 115), the owners must retain the nominal amount of his bills. This is going further than the case in Pickering warrants; and would defeat, pro tanto, the remedy of seamen against both vessel and owners for wages. I think the owners can retain only what is found actually to be due the master, after examination and proof. When the libellants were taken ashore, the master retained their clothing, alleging that it was forfeited. They now claim the value of this clothing. There is no evidence of any demand upon the owners, and refusal on their part, to deliver up the clothing, since the ship returned. It is said that the master acted as their agent in retaining it, and that it is in their possession, without any disclaimer on their part, or offer to return it; but I think there must be some evidence that they have ratified, or assumed, the master's act, to entitle the seamen to recover the value, in money, in this action.

The accounts were referred to an assessor. A question having arisen in regard to the custody fees, it was reserved for future examination.

R. H. Dana, Jr., at a later day, presented the case to the court in behalf of all the parties. The evidence was by affidavits, and it appeared that the deputy marshal (Mr. Gordon), was directed by the warrant to take the vessel into his custody, and to give notice, by posting at the court-house in Boston, and by publication in the newspapers. The posting and publishing were duly made. It appeared that the officer reached New Bedford late in the evening, went on board the vessel alone, found no one there, and took formal possession. After this act, he did nothing more, and neither went on board again himself, nor appointed any person to take charge of the vessel. She lay at the owner's wharf, dismantled and under repairs, the carpenter and the managing owner being on board the greater part of every day, and

the vessel lying, so that she could be seen from the windows of the owner's counting room. The owner, his clerk, and the master carpenter, testified that they had no suspicion that the vessel had been arrested, until the twelfth day, when they learned it accidentally, from a person who had seen it in the newspapers. The next day, the owner came to Boston, and gave bonds. There was some evidence tending to show that the officer sent a lad to the owner's counting room with a verbal message, that the vessel was arrested; but the message was not received by the owner, or his clerk. The officer charged $39, custody fees, for thirteen days, and relied upon the fact, that having made return that he had arrested the vessel, he thereby became responsible for the custody, to the court and the parties, and took the risk of having no keeper. His fees for the arrest, publication, travel, &c., were not disputed. The only question was as to the fees for custody.

R. H. Dana, Jr., for libellants.
T. G. Coffin, for respondent.

SPRAGUE, District Judge. In the execution of admiralty process in rem, the officer should take actual and manifest possession, and hold it in such manner, that inquirers and observers may learn, or see, that he has such possession.

It is not necessary to decide, in this case, whether after such an arrest and possession, the officer must have some person on board, or near the vessel, during the whole time for which he charges fees. It is sufficient to say, that no proper arrest and possession have been shown. The officer may so act, as to become responsible to both parties, for the safe-keeping of the vessel, and yet not entitle himself to fees. Where personal notice is not ordered, it is on the supposition that the arrest and custody will be sufficient notice. The custody fees must be disallowed.

See U. S. v. Givings [Case No. 15,212]; U. S. v. Ashton [Id. 14,470]; The William Harris [Id. 17,695]; The Moslem [Id. 9,875]; U. S. v. Nye [Id. 15,906]; U. S. v. Staly [Id. 16,374]; Dixon v. The Cyrus [Id. 3,930]; 5 Stat. 396 (1840, c. 48, §§ 12–14).